UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

```
MILTON (DUKE) FRANCIS            )
DUVALL, III, and                 )
DUVALL MARKETING, INC.,          )
                                 )
            Plaintiffs,          )
                                 )
      v.                         )   No. 4:06 CV 1168 DDN
                                 )
ECOQUEST INTERNATIONAL, INC.,    )
ECOQUEST INTERNATIONAL HOLDING   )
COMPANY, MICHAEL JACKSON,        )
NATALIE (NADA) JACKSON,          )
DONALD BENNETT, MARC KLONER,     )
JACK WILDER, MITCHELL TOLLE,     )
LEE ROPER, ROY KEITH,            )
BEST INVESTMENTS a/k/a HRT       )
INVESTMENT, INC., NETWORK        )
ENTERPRISES, INC., CONJACK, INC.,)
a/k/a CONJACK ENTERPRISES, L.L.C.,)
MOUNTAIN EMPIRE PROPERTY, L.L.C.,)
M & N CONSULTANTS, and           )
AIR PARTNERS INVESTMENT GROUP,   )
INC.,                            )
            Defendants.          )
```

**MEMORANDUM AND ORDER**

This matter is before the court on the motion of defendants Ecoquest International, Inc., Ecoquest International Holding Company, Michael Jackson, Natalie Jackson, Donald Bennett, Marc Kloner, Jack Wilder, Mitchell Tolle, Lee Roper, Roy Keith, Best Investments, a/k/a HRT Investment, Inc., Network Enterprises, Inc., Conjack, Inc., a/k/a Conjack Enterprises, L.L.C., Mountain Empire Property, L.L.C., M & N Consultants, and Air Partners Investment Group, Inc., to dismiss. (Doc. 18.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 35.) A hearing was held on March 6, 2007.

**I. Background**

Plaintiffs Milton (Duke) DuVall and DuVall Marketing, Inc., filed a 10-count complaint against the movants and defendants ABC Corporation,

John and Jane Doe, and John and Jane Doe II,[1] alleging claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1967, and state law claims, seeking monetary damages and injunctive relief. Specifically,

    1. Count I alleges a RICO claim, 18 U.S.C. § 1962(c), against the individual defendants;

    2. Count II alleges a RICO claim, 18 U.S.C. § 1962(c), against the corporate defendants;[2]

    3. Count III alleges a RICO conspiracy claim against the individual defendants, 18 U.S.C. § 1962(d);

    4. Count IV alleges a RICO conspiracy claim against the corporate defendants, 18 U.S.C. § 1962(d);

    5. Count V alleges claims of fraud and misrepresentation against defendants Michael Jackson, Natalie Jackson, Donald Bennett, Marc Kloner, Jack Wilder, Mitchell Tolle, Lee Roper, Best Investments, a/k/a HRT Investment, Inc., Conjack, Inc., a/k/a Conjack Enterprises, L.L.C., Mountain Empire Property, L.L.C., M & N Consultants, and Air Partners Investment Group, Inc.;

    6. Count VI alleges that, in the alternative to Count V, defendants Michael Jackson, Natalie Jackson, Donald Bennett, Marc Kloner, Jack Wilder, Mitchell Tolle, Lee Roper, Best Investments, a/k/a HRT Investment, Inc., Conjack, Inc., a/k/a Conjack Enterprises, L.L.C., Mountain Empire Property, L.L.C., M & N Consultants, and Air Partners Investment Group, Inc., engaged in a conspiracy to commit fraud;

    7. Count VII alleges a breach of contract under Missouri law against all defendants;

    8. Count VIII alleges an interference with a business expectation under Missouri law against all defendants;

---

[1]Defendants ABC Corporation, John and Jane Doe, and John and Jane Doe II have been dismissed because they were not served within the time limit set forth in Federal Rule of Civil Procedure 4(m). (Doc. 34.)

[2]A close inspection of the complaint reveals that the "corporate defendants" for purposes of Count II, are EcoQuest International, Best Investments, Network Enterprises, Conjack, Inc., Mountain Empire Properties, M & N Consultants, and Air Partners Investment Group, and that they comprised the "enterprise." (Doc. 1 at 85-86, 99-100.)

9. Count IX alleges a derivative action for breach of a fiduciary duty under Missouri law against all defendants; and

10. Count X alleges a derivative action for fraud and misrepresentation under Missouri law against all defendants.

(Doc. 1 at 75-128.)

These claims are based on a multitude of factual allegations in plaintiffs' 128-page complaint. Defendant EcoQuest International is a business that sells air purifiers, water purifiers, and nutritional products. DuVall Marketing was one of its dealers. Plaintiffs allege, generally, that Michael Jackson, together with the other defendants, made several statements and representations about Ecoquest International, including that the business was experiencing double-digit growth monthly, that bonuses would be awarded, that the company would be publicly traded, that Duke Duvall would be awarded lifelong employment under a contract with a "poison pill" provision, that Air Partners air-purifiers were based on sound science, and that Ecoquest based its business on Christian values. Plaintiffs allege that defendants' assertions about the financial success and values of the company were false and misled plaintiffs into working for the company. Duke Duvall alleges he was never paid promised bonuses nor awarded an employment contract, and was later threatened by defendants to resign.

Defendants moved to dismiss the complaint. They argue:
1. the complaint violates Federal Rule of Civil Procedure 8 because it is not clear, concise, or direct, or, in the alternative, plaintiffs should be required to file a more definite statement pursuant to Rule 12(e);

2. the mail, bank, and wire fraud allegations are not pled with specificity as required under Rule 9;

3. the RICO allegations are barred by the statute of limitations;

4. the fraud claims are all subject to dismissal because no pattern of racketeering can be shown;

5. plaintiff DuVall Marketing has suffered no injury; and

6. the remaining claims are all based on state law and should be dismissed.

Plaintiffs argue that a complaint alleging violations of RICO will necessarily be long and complex, and that this is further ensured by the specificity requirement of Rule 9. They argue that they were not aware, nor should they have been aware, of their injuries prior to May 2004, and therefore the statute of limitations had not lapsed when this action was commenced.

## II. Discussion

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003). The Supreme Court recently issued a new standard for evaluating motions to dismiss. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (overruling the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Despite overruling the Conley standard, the Supreme Court cautioned that it had not created a heightened pleading standard. Bell Atlantic, 127 S. Ct. at 1973 n.14, 1974.

Under Bell Atlantic, a complaint must include enough facts to state a claim for relief that is plausible on its face. Bell Atlantic, 127 S. Ct. at 1974. If the claims are merely conceivable - but not plausible - the court must dismiss the complaint. Id. To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 1965. A complaint does not, however, need specific facts; a complaint only needs to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). The Federal Rules of Civil Procedure demand only that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). That said, the allegations must still be enough to "raise a right to relief above the speculative level." Bell Atlantic, 127 S. Ct. at 1965.

A complaint must be liberally construed in the light most favorable to the plaintiffs. See Bell Atlantic, 127 S. Ct. at 1964-65. Moreover, a court must accept the facts alleged as true, even if doubtful. Id. at 1965. Thus, a well-pled complaint may proceed even if it appears the recovery is very remote or unlikely. Id. To warrant dismissal, the plaintiffs' entitlement to relief must fall short of being plausible.

## A. Counts I-IV--RICO

Counts I through IV allege RICO Act violations, 18 U.S.C. § 1962(c)-(d). 18 U.S.C. § 1962 provides, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)-(d).

"A plaintiff who brings suit under 18 U.S.C. § 1962(c) must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Handeen v. Lemaire, 112 F.3d 1339, 1347 (8th Cir. 1997). A plaintiff can only recover to the extent that he has been injured by the conduct constituting the violation. Id.

### 1. Conduct

The "conduct" requirement of RICO only allows recovery against those who "participate in the operation or management of the enterprise itself." Handeen, 112 F.3d at 1347. An enterprise can be operated not only by upper management, but by lower level persons who are under the direction of upper management. Reves v. Ernst & Young, 507 U.S. 170, 184 (1993); see also Abels v. Farmers Commodities Corp., 259 F.3d 910, 918 (8th Cir. 2001) (plaintiff sufficiently pled "conduct" when complaint alleged facts that defendant supervised and directed marketing

activities). Persons outside the immediate management or not even employed by the enterprise can satisfy the "conduct" requirement if they are under the direction of upper management and somehow control the enterprise.

The complaint alleges, in Counts I through IV, that the individual and corporate defendants violated RICO. The complaint alleges, for each defendant, as follows:

1. that individual defendant Michael Jackson was the incorporator and managing agent of EcoQuest International, and that he is a controlling shareholder;

2. that Natalie Jackson is a controlling shareholder of EcoQuest International, and that she was employed in a management position at EcoQuest;

3. that defendant Donald Bennett was the Chief Financial Officer of EcoQuest and of its predecessor, Alpine Industries;

4. that defendant Marc Kloner is a director and shareholder of EcoQuest;

5. that defendant Jack Wilder was involved in management of EcoQuest by serving as President;

6. that Mitchell Turner served as either president or on the board of directors of EcoQuest at all relevant times.

7. that defendant Lee Roper is a member of the board of directors of EcoQuest;

8. that defendant Roy Keith is employed as general counsel for EcoQuest;

9. that defendant Best Investments is a Tennessee corporation formed to finance dealer agreements and products sold by EcoQuest;

10. that defendant Conjack, Inc., is a Tennessee corporation formed by defendants Michael and Natalie Jackson to receive funds obtained through fraud;

11. that defendant Network Enterprises, Inc., is a Tennessee corporation formed by the Jacksons to receive funds obtained through fraud;

12. that defendant M & N Consultants is an entity formed by defendant Michael Jackson to perpetuate a fraudulent scheme by receiving funds obtained by fraud;

13. that defendant Air Partners Investment Group is a successor corporation of EcoQuest International which obtained all of its assets, which were obtained by fraud; and

14. that defendants Ecoquest International and EcoQuest Holdings allegedly operated as an enterprise that employed individuals that engaged in racketeering.

Plaintiffs also allege that the individual defendants "conducted the affairs of the enterprise." (Doc. 1 at 75.) The complaint pleads sufficient facts that Michael Jackson, Natalie Jackson, Donald Bennett, Mark Kloner, Jack Wilder, Mitchell Toll, and Lee Roper all held positions that enabled them to participate in the operation or management of EcoQuest, a purported member of an "enterprise."[3] The complaint further alleges that the defendant corporations conducted the affairs of the enterprise through their agents.

As discussed below, the only alleged "enterprise" that is legally sufficient is DuVall and DuVall Marketing. Construing the facts most liberally in plaintiffs' favor, defendants arguably, in their positions as either parties to the dealer agreements or serving as agents to EcoQuest, exercised some control over DuVall and DuVall Marketing. Because of these positions, defendants allegedly had some control over how plaintiffs did business.

Plaintiffs have sufficiently pled the existence of the first element, "conduct."

## **2. Enterprise**

"Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO "enterprise" must include three characteristics: "(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering." Handeen, 112 F.3d at 1351. The "enterprise" is an element separate from the pattern of

---

[3]As discussed below, plaintiffs allege several alternative "enterprises."

racketeering activity.  Id.  An enterprise is an "ongoing organization, formal or informal . . . [where] the various associates function as a continuing unit."  <u>Atlas Pile Driving Co. v. DiCon Fin. Co.</u>, 886 F.2d 986, 995 (8th Cir. 1989).

Plaintiffs allege several alternative theories about the makeup of the purported "enterprise."  In Count I, plaintiffs allege five alternative theories of enterprises:  (1) EcoQuest International by itself; (2) Best Investments, M & N Consultants, Network Enterprises, Conjack Enterprises, Mountain Empire, and Air Partners were each enterprises; or (3) EcoQuest International, Best Investments, Conjack Enterprises, M & N Consultants, Network Enterprises, Mountain Empire, and Air Partners associated to form *one* enterprise; or (4) Michael Jackson, Natalie Jackson, and Donald Bennett, as a group, were an enterprise; or (5) EcoQuest International, Best Investments, Conjack Enterprises, M & N Consultants, Network Enterprises, Mountain Empire, Air Partners, Michael Jackson, Natalie Jackson, and Donald Bennett formed an enterprise.  (Doc. 1 at 75-79.)  As stated below, Count I does not have any legally viable enterprise.

In Count II, plaintiffs allege that the "enterprise" consists of either (1) EcoQuest International, Best Investments, Conjack Enterprises, L.L.C., M & N Consultants, Network Enterprises Inc., Mountain Empire Property, L.L.C., and Air Partners Investment Group Inc., or (2) plaintiff DuVall Marketing; or (3) plaintiff Duke DuVall himself.  (Doc. 1 at 85, 87, 88.)

A plaintiff can allege, in the alternative, different enterprises. <u>Schnitzer v. Oppenheimer & Co.</u>, 633 F. Supp. 92, 98 (D. Or. 1985). Named defendants can join together to form an "enterprise" separate from their individual selves for purposes of RICO.  <u>Atlas Pile Driving</u>, 886 F.2d at 995.  However, a named defendant cannot by itself be an "enterprise" -- it must combine with someone or something else to form an enterprise.  Id.  Therefore, plaintiffs' theory that EcoQuest International or the six other corporations were themselves enterprises is not legally sufficient.  Count I alternatives 1 and 2 are legally insufficient.

The first element, "common or shared purpose," requires that the enterprise must be "marked by a common purpose, but it is not necessary that every single person who associates with the entity gain some discrete advantage as a result of that particular motivation." Handeen, 112 F.3d at 1351. "[I]t is sufficient if a RICO defendant shared in the general purpose and to some extent facilitated its commission." Id. (emphasis in original.)

Plaintiffs allege that the alternative "enterprises" consisting of the several corporate defendants or corporate defendants and individual defendants had a common purpose -- to facilitate mail fraud, wire fraud, bank fraud, extortion, and obstruction of justice, with the intent to defraud plaintiffs. (Doc. 1 at 86-87.) The alleged illegal money making scheme is alleged to have been a shared and common purpose.

"Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis." Handeen, 112 F.3d at 1351. "[T]he determinative factor is whether the associational ties of those charged with a RICO violation amount to an organizational pattern or system of authority." Id.

The "enterprises" here all had continuity of structure. All were allegedly led in some way by Michael Jackson, and consisted of either businesses he controlled or directors of those businesses.

The third element is existence of an ascertainable structure separate from the pattern of racketeering.

> In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation. 'Separating the enterprise from the pattern of racketeering is generally not problematic where a legal entity is involved, since this entity is likely to be clearly distinct from the acts of racketeering.'

Id. at 1352 (quoting United States v. Kragness, 830 F.2d 842, 855 n.10 (8th Cir. 1987)).

Here, the complaint does not allege whether some of the purported "enterprises" exist separate from the pattern of racketeering. The

-9-

alleged combination of the corporations appears to have no other purpose than to carry out the alleged acts of racketeering. If one were to remove the pattern of racketeering, the entities would exist on their own, but it is not alleged that they would exist with any purpose separate from racketeering. "That each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity." McDonough v. Nat'l Homes Ins. Co., 108 F.3d 174, 177 (8th Cir. 1997). Here, plaintiffs do not allege that these associations of businesses, or individuals and businesses, had any other purpose besides furthering the alleged fraudulent activity. In consequence, Count I, alternatives 3, 4, and 5, as well as Count II, alternative 1, are legally insufficient.

In the alternative, plaintiffs also allege that Duke DuVall or DuVall Marketing are each an "enterprise." (Doc. 1 at 87-88.) The complaint alleges that Duke DuVall and DuVall Marketing have a common or shared purpose, continuity of structure, and an existence separate from the pattern of racketeering.

The complaint does not allege the existence of enterprises, legally sufficient under RICO, beyond Duke DuVall and DuVall Marketing. None of Count I's purported enterprises are valid. Count I is therefore, dismissed without prejudice.

### 3. Pattern

A pattern of racketeering activity is present when the predicate acts are linked by continuity and relationship. H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989); Handeen, 112 F.3d at 1353. The various criminal or racketeering activities must be related and "amount to or pose a threat of continued criminal activity." H.J., Inc., 492 U.S. at 239. There must be at least two acts to satisfy the pattern element. Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 406 (8th Cir. 1999). Continuity can be alleged through a series of related events extending over a substantial period of time, normally over one year. Handeen, 112 F.3d at 1353. "It is not the number of predicates but the relationship that they bear to each other

or to some external organizing principle that renders them 'ordered' or 'arranged.'" H.J., Inc., 492 U.S. at 238.

> Prohibited activities are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'

Handeen, 112 F.3d at 1353 (quoting H.J. Inc., 492 U.S. at 240).

Plaintiffs allege in each of Counts I through IV, that defendants participated in a pattern of racketeering activity, including activities of mail and wire fraud (¶¶ 22-54, 55-72, 91-135), bank fraud (¶¶ 60-69, 106-22), extortion (¶¶ 73-88), obstruction of justice (¶¶ 73-90), and interstate travel (¶¶ 73-76), and allege that all events occurred after the effective date of RICO and occurred within 10 years of each other.

These allegations show a pattern of racketeering activity. The same participants were allegedly involved in most activities, and the victims were consistently the plaintiffs. The alleged methods of commission are similar. All involve false promises of profits or bonuses, or false representations of the product line in order to convince plaintiffs to deal with defendants. These activities allegedly resulted in extortion. There is no isolated criminal activity pled that does not relate to the rest. The paragraphs referred to by plaintiffs in each respective count allege a pattern of racketeering activity. They are more than isolated events or unrelated criminal activity. Defendants argue that the specific events should be laid out in the count itself and not by referral to previous paragraphs. The referral to previous paragraphs is not a pleading error, and, in fact, such can avoid the unnecessary repetition of lengthy facts.

### 4. Racketeering Activity

Racketeering activity is defined in the statute, and includes several state law crimes, conduct indictable under federal statutes, and other offenses. 18 U.S.C. § 1961(1). As predicate acts, plaintiffs allege mail and wire fraud (¶¶ 22-54, 55-72, 91-135), bank fraud (¶¶ 60-69, 106-22), extortion (¶¶ 73-88), obstruction of justice (¶¶ 73-90),

and interstate travel (¶¶ 73-76). All except for the generic "interstate travel" are included in the statute as racketeering activities.

"When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." Wisdom, 167 F.3d at 406-07. "Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves. The court must look to the underlying scheme to defraud." Id. at 407.

A close and liberal reading of the complaint reveals that, if true, plaintiffs have pled facts that could satisfy these elements. Generally, the complaint alleges that Jackson and the other defendants promised profits and incomes and bonuses, based on false financial statements all defendants knew to be false. Plaintiffs allege they relied on these representations to their detriment. Plaintiffs allege the defendants foresaw the use of the mails and wires, for the purpose of the fraud, and used them. This is sufficient at this point in the analysis.

> Under 18 U.S.C. § 1344, a person has committed bank fraud if he knowingly executes, or attempts to execute, a scheme or artifice--
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

18 U.S.C. § 1344; Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc., 777 F. Supp. 228, 239 (S.D.N.Y. 1991). Plaintiffs have pled that they believe defendants transferred corporate assets without value, falsely reported or failed to disclose these transfers to financial institutions, and that this was an act of bank fraud. Plaintiffs allege more discovery is needed to determine if this is true. As discussed below, plaintiffs will be given a chance to amend after discovery.

-12-

Defendants argue that the claims for bank, mail, and wire fraud should be dismissed because plaintiffs failed to plead them with particularity as required under Federal Rule of Civil Procedure 9(b). Federal Rule of Civil Procedure 9(b) provides

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b). Rule 9(b) applies when mail, bank, and wire fraud are used as a basis for a RICO claim. Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995). As used in the statute, the "circumstances" that must be pled with particularity include "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Abels, 259 F.3d at 920; Murr Plumbing, 48 F.3d at 1069; see also DeWit v. Firstar Corp., 904 F. Supp. 1476, 1524 (N.D. Iowa 1995) (noting that general allegations of multiple instances of fraud, but failure to identify which plaintiffs were contacted or defrauded in what way, and lack of time, place, and content of the messages, was insufficient to plead fraud). Courts have found a lack of particularity when plaintiffs fail to allege the good purchased, the amount of fraudulent profit, when the fraud took place, and who specifically was responsible. See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 2000).

Plaintiffs argue that they cannot plead all the averments of fraud any more specifically because the specifics are in the exclusive control of defendants. (Doc. 1 at ¶ 130.) However, the complaint does include some specific examples of mail and wire fraud, and says that bank fraud likely occurred. At this time, because of the strict pleading requirement, the listed instances of fraud in the complaint are the only ones at issue in the case. If discovery leads to other specific instances, plaintiffs can move to amend the complaint. In re Lupron Marketing and Sales Practices Litig., 295 F. Supp. 2d 148, 170-71 (D. Mass. 2003) ("We advocate this procedure [amendment after discovery] because of the apparent difficulties in specifically pleading mail and

-13-

wire fraud as predicate acts.") Therefore, the bank fraud predicate act must fail, and any unlisted mail and wire fraud will not be considered.

"Extortion is defined as 'obtaining . . . property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" Wisdom, 167 F.3d at 407 (quoting 18 U.S.C. § 1951(b)(2)). Plaintiffs refer to paragraphs 73-88 for facts supporting this claim. A close reading of these paragraphs shows that EcoQuest is alleged to have held certain "dealer agreements" with dealers, which provided that the agreements were "lifetime" agreements that could be sold by the dealer or inherited. The complaint alleges that EcoQuest and Mark Kloner, in conspiracy with the other individuals, threatened economic loss and cancellation of contract if the dealers did not agree to certain demands, which the agreement did not require of the dealers. Specifically, DuVall alleges he was threatened that he would lose his dealer's agreement if he did not sign an agreement consenting to relinquish all legal causes of action. It is also alleged that defendants also withheld his earnings pending his signature, as well as the earnings of DuVall Marketing. Ultimately, he was paid after DuVall's attorney wrote a threatening letter. He was thereafter threatened again by Michael Jackson and Mark Kloner's agent.[4]

These alleged facts sufficiently allege extortion. Defendants allegedly withheld earnings and threatened the loss of the dealership agreement of both plaintiffs in exchange for an agreement of plaintiffs not to sue.

"It is an obstruction of the due administration of justice to intentionally influence or injure a juror or officer 'in or of any court of the United States.'" O'Malley v. New York City Transit Auth., 896 F.2d 704, 707 (2d Cir. 1990) (quoting 18 U.S.C. § 1503). Under the statute, the act purported to be an obstruction of justice must relate to a federal court. Id. Referring to paragraphs 73-90 of the

---

[4]This section of the complaint also alleges facts about Duke DuVall's parents and two other dealers whose contracts were canceled when they refused to contribute to a radio advertising campaign. (Doc. 1 at ¶¶ 77, 80, 85, 87.) These people are not parties and these allegations are not relevant to the pending motion to dismiss.

complaint, plaintiffs have not pled that any act of any defendant obstructed justice in any federal court. Plaintiffs allege defendants threatened DuVall about bringing a lawsuit, but did not intentionally influence any juror or officer of the court. This claim must fail as a predicate act.

### 5. Injury

Defendants argue that DuVall Marketing has not been injured by any alleged racketeering activity. A plaintiff has standing to bring a RICO claim if "he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." Sedima, 473 U.S. at 496-97 (quoting Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago, 747 F.2d 384, 398 (7th Cir. 1984)).

Plaintiffs allege that DuVall Marketing relied on false financial claims to its detriment, losing money because of defendants' actions. The complaint alleges, among other things, that earnings were withheld from DuVall Marketing for failure of Duke DuVall to sign a separation agreement, and that DuVall Marketing entered into a dealer agreement based on false promises. Plaintiffs have pled that DuVall Marketing was injured.

### 6. Conspiracy

Plaintiffs allege in Counts III and IV that defendants conspired to violate RICO. Plaintiffs must allege an agreement that the parties had an understanding to violate the statute. Handeen, 112 F.3d at 1354. Plaintiffs allege that each of the corporations and individuals were in agreement to "further an endeavor of Michael Jackson" that if completed would satisfy all the elements of RICO. (Doc. 1 at 95, 99.)

## 7. Statute of Limitations

Defendants also argue that plaintiffs' RICO claims are barred by the statute of limitations. They argue that plaintiffs knew of the alleged fraudulent conduct in May, June or July 2002, yet did not file their complaint until August 2006, past the four year statute of limitations under RICO.

"Civil RICO claims are governed by a four-year statute of limitations." Klehr v. A.O. Smith Corp., 87 F.3d 231, 238 (8th Cir. 1996), aff'd, 521 U.S. 179 (1997); see also Misischia v. St. John's Mercy Health Sys., No. 4:04CV1161CEJ, 2005 WL 1875035, at *7 (E.D. Mo. Aug. 5, 2005). The statute of limitations begins to run when the plaintiffs knew or should have known of their injury. Rotella v. Wood, 528 U.S. 549, 554 (2000);[5] Wal-Mart Stores, Inc. v. Watson, 94 F. Supp. 2d 1027, 1033 (W.D. Ark. 2000). "[A]n action begins to accrue 'as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern.'" Klehr, 87 F.3d at 238 (quoting Assoc. of Commonwealth Claimants v. Moylan, 71 F.3d 1398, 1402 (8th Cir. 1995)).

Generally stated, the commencement of this action outside the applicable statutory limitations period is an affirmative defense, which defendants must plead and prove. Cf. Jones v. Bock, 127 S. Ct. 910, 920 (2007). On a motion to dismiss for failure to comply with Rule 12(b)(6), the court can consider "whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Id. at 921. Thus, the court must determine as a matter of law whether the cause of action accrued before August 3, 2002, four years prior to the commencement of this case, which depends upon whether or not the allegations establish plaintiffs knew or should have known about their injuries.

---

[5]The Rotella court noted that, while they have eliminated all but one of the methods the various circuits used to determine when the statute of limitations begins to run, they have not settled upon a final rule. 528 U.S. at 554 n.2. In a footnote, the court discussed an "injury occurrence" rule. Therefore, this court will use "some form of injury discovery rule" because it is the only method used by the various circuits that has not been discounted by the Supreme Court. See id.

-16-

A liberal reading of the complaint does not reveal as a matter of law that plaintiffs should have known of their injuries by August 3, 2002. The first alleged instance of defendants promising "consistent, monthly, double-digit growth," which defendants argue should have alerted plaintiffs to their injury, occurred in October 2001. (Doc. 1 at 16.) Even without bonuses being paid, from the facts alleged in the complaint it cannot be said as a matter of law that plaintiffs should have known within 10 months that these assertions of growth were false. Plaintiffs allege Duke Duvall questioned why bonuses were not paid when such growth was being experienced, and he was given an explanation. The court concludes that the plaintiffs' allegations do not establish as a matter of law that the plaintiffs commenced this action outside the statutory limitations period. Further consideration of this affirmative defense must be by dispositive motion or by trial.

In conclusion, plaintiffs' complaint has failed to properly plead the "enterprise" element of the racketeering statute in many of their alleged enterprises. At the hearing held March 3, 2007, plaintiffs advised the court they would be willing to amend their complaint to make this more clear. Further, the complaint fails to properly plead bank fraud, interstate travel, and obstruction of justice as predicate acts. These allegations are dismissed.

### B. Counts V - X

Counts V, VI, and X allege state law claims for fraud and conspiracy to commit fraud, and a derivative claim for fraud and misrepresentation. (Doc. 1.) Counts VII, VIII, and IX are state law claims of breach of contract, interference with a business expectancy, and a derivative action for breach of fiduciary duty. Defendants argue that all of these claims should be dismissed because, without the RICO claims this court does not have jurisdiction.

The court has not dismissed the RICO claims in their entirety. Therefore, it is premature at this time to dismiss these claims for lack of supplemental jurisdiction.

For the above-stated reasons,

**IT IS HEREBY ORDERED** that the motion of defendants to dismiss (Doc. 18) is sustained as follows:
    (a) Count I is dismissed without prejudice.
    (b) The allegations of obstruction of justice, bank fraud, and interstate travel are dismissed without prejudice.
In all other respects the motion to dismiss is denied.


      /S/   David D. Noce
    **UNITED STATES MAGISTRATE JUDGE**

Signed on August 14, 2007.