UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MILTON (DUKE) FRANCIS ) | |
| DUVALL, III, and ) | |
| DUVALL MARKETING, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:06 CV 1168 DDN |
| ) | |
| ECOQUEST INTERNATIONAL, INC., ) | |
| ECOQUEST INTERNATIONAL HOLDING ) | |
| COMPANY, MICHAEL JACKSON, ) | |
| NATALIE (NADA) JACKSON, ) | |
| DONALD BENNETT, MARC KLONER, ) | |
| JACK WILDER, MITCHELL TOLLE, ) | |
| LEE ROPER, ROY KEITH, ) | |
| BEST INVESTMENTS a/k/a HRT ) | |
| INVESTMENT, INC., NETWORK ) | |
| ENTERPRISES, INC., CONJACK, INC., ) | |
| a/k/a CONJACK ENTERPRISES, L.L.C., ) | |
| MOUNTAIN EMPIRE PROPERTY, L.L.C., ) | |
| M&N CONSULTANTS, ABC CORPORATION, ) | |
| AIR PARTNERS INVESTMENT GROUP, ) | |
| INC., JOHN AND JANE DOE, ) | |
| JOHN AND JANE DOE II ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This action is before the court upon the motions of plaintiffs Milton Duke DuVall and DuVall Marketing, Inc., for leave to file an amended complaint (Doc. 91), for injunctive relief and the appointment of a special master (Doc. 92), and for leave to file additional exhibits (Doc. 114). Also before the court are the motions of defendants for partial summary judgment (Doc. 81), to seal documents (Doc. 88), for leave to redact previously filed documents (Doc. 124), and for Rule 11 sanctions (Doc. 115). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 35.)

**I. BACKGROUND**

Plaintiffs Milton Duke DuVall and DuVall Marketing, Inc. filed a 10-count complaint against the defendants alleging claims under the

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1967, and state law claims, seeking monetary damages and injunctive relief. (Doc. 51.) These claims are based on a number of factual allegations contained in the plaintiffs' hundred-page complaint. (Id.) Defendant EcoQuest International is a business that sells air purifiers, water purifiers, and nutritional products. (Doc. 71 at ¶ 27.) DuVall Marketing was one of its dealers. (See id. at ¶ 102.)

The plaintiffs allege that Michael Jackson, together with the other defendants, made several statements and representations about EcoQuest International. In particular, the plaintiffs allege that the defendants represented that their business was experiencing double-digit growth, bonuses would be awarded, the company would be publicly traded, Duke Duvall would be awarded lifelong employment under a contract with a "poison pill" provision, that Air Partners air-purifiers were based on sound science, and that EcoQuest International based its business on Christian values. (Doc. 51 at ¶¶ 26, 34-38, 40-42, 44-45, 104-106, 109-110.) The plaintiffs allege that the defendants' assertions about the financial success and values of the company were false and misled them into working for the company. (See id. at ¶¶ 111-114.) Duke Duvall alleges he was never paid promised bonuses or awarded an employment contract, and that he was later threatened by the defendants in an effort to get him to resign. (Id. at ¶¶ 26, 35, 54, 79-80.)

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendants move for partial summary judgment on Duke DuVall's shareholder derivative claims, Counts IX and X. (Doc. 81.) The defendants argue Duke DuVall never owned stock in either EcoQuest International, Inc. (EcoQuest International) or EcoQuest Holding Corporation (EcoQuest Holding), and therefore lacks standing to bring a shareholder derivative action. (Doc. 82.) In response, DuVall argues that he was promised 50,000 shares of general EcoQuest stock in an April 2002 telephone call, and that he later received a stock option certificate for 50,000 shares of EcoQuest Holding stock in March 2004. DuVall argues these circumstances create an issue of triable fact as to

his stock ownership, and that possession of a stock certificate is not necessary to prove shareholder status. (Doc. 86.)

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

### B. Statement of Undisputed Facts

EcoQuest Holding was created in December 2002. (Doc. 81, Bragg Affidavit at ¶ 5.) Since that time, EcoQuest International has been a wholly owned subsidiary of EcoQuest Holding. (Id.) EcoQuest Holding maintains a capitalization chart, which contains the names of all the individuals who hold stock, have held stock, or who hold options to purchase stock in EcoQuest Holding. (Id. at ¶ 3.) According to the capitalization chart, Duke DuVall held 100,000 options to purchase EcoQuest Holding stock, with a grant date of March 31, 2003. (Id. at ¶ 4.) Fifty thousand shares would vest on March 31, 2004, but only if the company reached a sales revenue of at least $120,000,000 by the end

of the 2003 fiscal year. (Doc. 81, Ex. B at 12-13.) The other fifty thousand shares would vest on March 31, 2005, but only if the company reached a sales revenue of at least $200,000,000 by the end of the 2004 fiscal year. (Id.) These options never vested, and DuVall never exercised these options. (Doc. 81, Bragg Affidavit at ¶ 4.) No individuals own stock in EcoQuest International. (Id. at ¶ 5.)

### C. Discussion

A federal court considering a shareholder derivative suit must apply the substantive law of the state of incorporation. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991). In this case, EcoQuest Holding is a Delaware Corporation and EcoQuest International is a Tennessee Corporation. (Doc. 51 at ¶ 5; Doc. 58 at ¶ 5.)

**EcoQuest Holding Company**

The shareholder derivative action was developed by equity to allow stockholders to sue in the corporation's name, where those in control of the corporation refused to assert a claim on behalf of the corporation. Schoon v. Smith, 953 A.2d 196, 202 (Del. 2008). The derivative action represents two lawsuits. Id. On the one hand, it represents a lawsuit by the stockholders to compel the corporation to sue. Id. On the other hand, it represents a lawsuit by the corporation, asserted by the stockholders, against those liable to it. Id. Under Delaware law, "it has been generally accepted . . . that only one who was a stockholder at the time of the transaction or one whose shares devolved upon him by operation of law may maintain a derivative action." Harff v. Kerkorian, 324 A.2d 215, 218 (Del. Ch. 1974), aff'd in part and rev'd in part, 347 A.2d 133 (Del. 1975) (per curiam).

The amended complaint alleges that DuVall was a shareholder of EcoQuest International, but never alleges that he was a shareholder of EcoQuest Holding. (Doc. 51 at ¶¶ 268, 277.) The original complaint also failed to allege that DuVall was a shareholder of EcoQuest Holding. (Doc. 49 at 3); DuVall v. EcoQuest Int'l, Inc., No. 4:06 CV 1168 DDN, 2007 WL 2811052, at *2 (E.D. Mo. Sept. 24, 2007) (dismissing DuVall's shareholder derivative claims against EcoQuest Holding).

In his proposed second amended complaint, DuVall alleges that he is a shareholder of EcoQuest Holding. (Doc. 91 at ¶¶ 358, 368.) He alleges that he received 50,000 shares of EcoQuest Holding stock on April 23, 2002, and that these shares were recorded on March 12, 2003. (Id. at ¶ 358.) Alternatively, he argues he received 50,000 shares of EcoQuest Holding stock as part of his incentive compensation agreement. (Id. at ¶ 359.) According to that agreement, DuVall would receive 50,000 shares of EcoQuest Holding stock if the company reached $120,000,000 in gross sales in 2003, and would receive an additional 50,000 shares of EcoQuest Holding stock if the company reached $200,000,000 in gross sales in 2004.[1] (Doc. 86, Ex. 3.) For the purposes of this motion for partial summary judgment, the court will consider the allegations in the proposed second amended complaint.

DuVall argues that he was told he would be awarded 50,000 shares of EcoQuest stock during a phone call with Michael Jackson on April 23, 2002. (Doc. 86, Ex. 2 at ¶ 5.) On March 12, 2003, DuVall argues that Jackson told him he was signing stock certificates. (Id. at ¶ 8.) DuVall notes that he received a stock option certificate for 50,000 shares, with a grant date of March 31, 2003. (Id. at ¶ 15; Doc. 1, Ex. 7.) Finally, DuVall states that he received 50,000 shares of stock on March 31, 2004, and that he was told he owned an additional 50,000 shares of stock that same day. (Doc. 86, Ex. 2 at ¶¶ 17, 19.)

These statements are insufficient to create a triable issue of fact as to DuVall's stock ownership. The issuance of corporate stock is an act of fundamental legal significance. Grimes v. Alteon, Inc., 804 A.2d 256, 260 (Del. 2002). Issuing stock has a direct influence on control of a company, the capital structure of the company, and corporate governance. Id. Given its importance, the law requires that stock be issued with certainty, and that any issuance should "not be easily or capriciously called into question." Id. at 260, 262. As a result, Delaware law requires that the issuance of stock "must be approved by the

---

[1]This agreement is not signed, not dated, and is not printed on company letterhead. (Doc. 86, Ex. 3.)

board of directors and evidenced by a written instrument." Id. at 260. An oral promise will not suffice. See id. at 258.

In this case, there is no evidence DuVall ever received stock in EcoQuest Holding. The company's capitalization chart does not list DuVall as an active shareholder. There is no evidence DuVall attended shareholder meetings, voted as a shareholder, or received dividends from the company. There is no evidence the board of directors approved any sale of stock to DuVall. DuVall has not come forward with any copies of stock certificates. He merely states that he was promised stock. But as noted in Grimes, an oral promise to convey stock, standing alone, is unenforceable as a matter of law. Id. at 266.

DuVall also notes he received a stock option certificate. This is insufficient to maintain a derivative action. "The holder of an option to purchase stock is not an equitable stockholder of the corporation." Harff, 324 A.2d at 219. An option holder has not made any investment in the company, and remains unexposed to the benefits and risks of stock ownership. See In re New Valley Corp. Derivative Litig., No. C.A. 17649-NC, 2004 WL 1700530, at *4 (Del. Ch. June 28, 2004) (unpublished opinion). To allow an option holder to bring a derivative suit, would unfairly allow those who have not taken an investment risk to use a procedure designed to protect those who have taken such a risk. See id. at *6. "This would certainly be an abuse of the derivative suit." Id.

Duke DuVall has not offered any legally sufficient evidence that he owned stock in EcoQuest Holding. See Testa v. Jarvis, Civ. A. No. 12847, 1994 WL 30517, at *6 (Del. Ch. Jan. 12, 1994) (unpublished opinion) (Where the company ledger does not reflect record ownership and the plaintiff does not have a certificate of stock, "the onus is rightly placed on [him] to show that [he] is indeed a shareholder."). He therefore lacks standing to maintain his shareholder derivative suit on behalf of EcoQuest Holding.

**EcoQuest International, Inc.**

Under Tennessee law, a person lacks standing to bring a shareholder derivative suit against a corporation "unless the person was a

shareholder of the corporation when the transaction complained of occurred . . . ." Tenn. Code Ann. § 48-17-401(a); <u>Humphreys v. Plant Maint. Servs., Inc.</u>, No. 02A01-98-11-CV-323, 1999 WL 553715, at *7 (Tenn. Ct. App. July 30, 1999).

In his amended complaint, DuVall alleges that he is a shareholder of EcoQuest International. (Doc. 51 at ¶¶ 268, 277.) In support of this allegation, DuVall raises the same arguments he raised in support of owning EcoQuest Holding stock. He also argues that his stock in EcoQuest Holding gives him ownership rights in its wholly-owned subsidiary, EcoQuest International. (Doc. 86 at 10.)

Once again, there is no evidence DuVall ever received stock in EcoQuest International. There is no evidence DuVall attended shareholder meetings, voted as a shareholder, or received dividends from the EcoQuest International. There is no evidence the board of directors approved any sale of stock to DuVall. Indeed, according to H. Dan Bragg, the Controller and Corporate Secretary of EcoQuest Holding, no individuals own stock in EcoQuest International. (Doc. 81, Bragg Affidavit at ¶ 5.) DuVall has not come forward with any copies of stock certificates. DuVall argues that he was also promised stock in EcoQuest International, but as noted in <u>Grimes</u>, an oral promise to convey stock, standing alone, is unenforceable as a matter of law. <u>Grimes</u>, 804 A.2d at 266.

DuVall also argues that he owned stock in EcoQuest International by virtue of owning stock in EcoQuest Holding. But as noted above, DuVall has not provided legally sufficient proof that he ever owned stock in EcoQuest Holding. In addition, a subsidiary corporation is presumed to be an independent legal entity, separate and distinct from both its shareholders and parent corporation. <u>Loew v. Gulf Coast Dev., Inc.</u>, No. 01-A-019010CH00374, 1991 WL 220576, at *3 (Tenn. Ct. App. Nov. 1, 1991). Absent special circumstances, owning stock in the parent corporation does not confer any ownership rights in the subsidiary corporation. <u>Panitz v. F. Perlman & Co.</u>, 173 S.W.3d 421, 428-29 (Tenn. Ct. App. 2004).

Duke DuVall has not offered any legally sufficient evidence that he owned stock in EcoQuest International. <u>See</u> <u>Testa</u>, 1994 WL 30517, at *6. He therefore lacks standing to maintain his shareholder derivative suit on behalf of EcoQuest International.

The motion of the defendants for partial summary judgment is sustained. Counts IX and X are dismissed with prejudice.

### III. MOTION TO SEAL AND FOR COSTS

The defendants move to seal a document marked "confidential," and for the costs associated with preparing the motion to seal. (Doc. 88.) The defendants argue that this is the second time the plaintiffs have failed to comply with the protective order, and under Rule 37(b)(2), the court has the power to assess costs. (Doc. 89.) The plaintiffs argue the failure to comply with the protective order was inadvertent, the protective order is overbroad and should be amended, and that the defendants have also filed confidential documents not under seal. (Doc. 90.) Defendants have not denied these arguments.

The parties agreed to a protective order. (Doc. 65.) Under the terms of the protective order, all material "designated as CONFIDENTIAL pursuant to this Protective Order which are presented to the Court <u>shall be filed under seal</u>." (<u>Id.</u> at ¶ 7) (emphasis added). On May 30, 2008, the plaintiffs failed to file a confidential document under seal. (<u>See</u> Docs. 73, 80.) The court sealed the document at the defendants' request. (<u>See</u> Docs. 78, 80.) On July 10, 2008, the plaintiffs again failed to file a confidential document under seal. (<u>See</u> Doc. 86, Ex. 5.)

During the hearing, the Deputy Clerk filed Exhibit 5 of Document 86 under seal. The motion to seal is therefore denied as moot. Because defendants themselves filed, not under seal, documents marked "confidential," and because the security of the document at issue was quickly preserved, the motion for costs is denied.

### IV. MOTION TO AMEND

Plaintiffs move for leave to file a second amended complaint. (Doc. 91.) The plaintiffs argue that the seconded amended complaint does not add new claims, but merely corrects deficiencies in the first amended complaint. The plaintiffs also argue that sufficient time for discovery remains. (Doc. 96.) The defendants do not object to some of the proposed amendments, but argue the plaintiffs should not be allowed to

amend the complaint to defeat their motion for partial summary judgment. (Doc. 97.)

### A. Motion to Amend Standard

The Federal Rules of Civil Procedure support a liberal policy on amendments to pleadings. <u>Dennis v. Dillard Dep't Stores, Inc.</u>, 207 F.3d 523, 525 (8th Cir. 2000). Before a responsive pleading has been filed, a party may amend its pleadings once as a matter of course. Fed. R. Civ. P. 15(a). If the pleading requires no response and the action has not been placed on the trial calendar, the party may amend its pleading within twenty days of service. <u>Id.</u> In this case, the defendants have filed an answer to the original complaint and to the first amended complaint. The plaintiffs may amend only by leave of court. <u>Id.</u> Under Rule 15, leave shall be given where justice so requires. <u>Id.</u>; <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962).

A district court may deny leave to amend only for a limited number of reasons. <u>See</u> <u>Dennis</u>, 207 F.3d at 525. Undue delay, the moving party's bad faith or dilatory motive, a repeated failure to cure the deficiencies through previous amendments, futility of the amendment, or undue prejudice to the opposing party, justify denying a motion to amend. <u>Id.</u> Delay alone provides insufficient grounds to deny leave to amend. <u>Id.</u> Likewise, the "adverse party's burden of undertaking discovery, standing alone," provides insufficient grounds to deny leave to amend. <u>Id.</u> The party opposing a motion to amend must show the amendment will create unfair prejudice. <u>Id.</u> That said, any prejudice to the nonmoving party must also be weighed against prejudice to the moving party, by denying the amendment. <u>Bell v. Allstate Life Ins. Co.</u>, 160 F.3d 452, 454 (8th Cir. 1998).

### B. Discussion

The plaintiffs' proposed second amended complaint seeks to make several changes to the first amended complaint. First, Natalie Jackson's name is changed to Fortunata Jackson. Second, Best Investments is also referred to as Best Finance, but not HRT. Third, Air Partners Investment Group is no longer listed as a defendant. Fourth, EcoQuest MAC is

described as a non-defendant affiliate. Fifth, the section of the complaint dealing with DuVall Marketing is restated. Sixth, an additional fact is added to the section on the alleged illegal pyramid scheme. Seventh, Count IX is reworded for greater clarity. Eighth, Counts IX and X are changed to allege that DuVall was a shareholder of EcoQuest Holding. (Doc. 96.)

The defendants do not object to the first four changes, and welcome them as necessary amendments. The defendants argue that the other changes are not as constructive. They argue the second proposed amended complaint is less clear and more repetitive than the first amended complaint, and contains close to a hundred more paragraphs than the first amended complaint. Yet, the defendants do not object to the plaintiffs' right to file the second amended complaint at this time. The defendants only object to the eighth change, which alleges Duke DuVall was a shareholder of EcoQuest Holding. (Doc. 97.)

**Amendments to the Shareholder Derivative Claims**

Denial of leave to amend may be justified when the amendment is futile. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 755 (8th Cir. 2006). In this case, the proposed amendment concerning DuVall's shareholder status is futile. As noted above, DuVall has failed to offer legally sufficient evidence that he ever owned stock in either EcoQuest Holding or EcoQuest International. In deciding the motion for partial summary judgment, the court considered the allegations in the proposed second amended complaint.

The motion to amend the shareholder derivative claims is denied as futile. The complaint shall not include Counts IX and X.

**Remaining Amendments**

The plaintiffs filed their original complaint on August 3, 2006. That complaint included two-hundred fifty-three paragraphs and was over one hundred twenty pages long. (Doc. 1.) On September 24, 2007, the plaintiffs filed their first amended complaint. The first amended complaint included two-hundred eighty-eight paragraphs and was just over one hundred pages long. (Doc. 51.) On July 24, 2008, nearly two years

after the lawsuit was filed, the plaintiffs filed this motion for leave to file a second amended complaint. The proposed second amended complaint includes three hundred eighty-five paragraphs, and is just under one hundred pages long. (Doc. 91, Ex. 1.)

Close to two years have passed since the plaintiffs filed their original complaint. The plaintiffs seek to file a second amended complaint, a hundred pages long, that merely restates allegations that have already been made. The plaintiffs shall not file an amended complaint. See Becker v. Univ. of Neb. at Omaha, 191 F.3d 904, 908 (8th Cir. 1999) (Holding district court did not abuse its discretion in denying the plaintiff's motion to amend the complaint. The motion to amend was filed almost two years after the original complaint and sought to add numerous, repetitive allegations to the complaint). However, the plaintiffs may amend the amended complaint by interlineation to include changes one, two, three, four, and six, as identified above.

The motion for leave to file a seconded amended complaint is denied in part, and otherwise granted. The plaintiffs shall not file the proposed second amended complaint, but the first amended complaint is hereby amended by interlineation.

### V. MOTION TO FILE ADDITIONAL EXHIBITS

The plaintiffs move to file three additional exhibits to support their motion for injunctive relief. (Doc. 114.) The defendants have not objected to this motion.

The motion to file additional exhibits is granted.

### VI. MOTION FOR AN INJUNCTION AND APPOINTMENT OF SPECIAL MASTER

The plaintiffs move for injunctive relief and the appointment of a special master. (Doc. 92.) The plaintiffs argue that EcoQuest International changed the qualifications for dealer compensation, and never notified them of these changes. The plaintiffs also argue that their compensation records have been altered. As a result, the plaintiffs argue that they have not been paid the maximum compensation, and that they have lost thousands of dollars in earnings. They argue that these facts support injunctive relief. The plaintiffs do not make

any specific arguments to support their call for the appointment of a special master. (Doc. 93.)

In response, the defendants argue that the plaintiffs have simply failed to qualify for the disputed pay bonuses. The defendants also argue that there are legitimate reasons - such as subsequently cancelled orders - for why the plaintiffs' records may have changed. The defendants argue that the plaintiffs' complaints are a matter of contract, unworthy of injunctive relief. (Doc. 98.)

**Compensation Scheme**

EcoQuest is a multi-level marketing company that distributes a consumable line of products and a technology line of products. (Doc. 98, Hansard Affidavit at ¶ 2.) EcoQuest provides bonuses to its dealers based on their distribution of these products. (Id.) EcoQuest reserves the right to change its calculations or its bonus structure from time to time, though these changes are communicated to the dealers through email and the company's website. (Id.)

EcoQuest calculates bonuses in various ways, depending on the production of the individual dealer and the production of those within the dealer's downline. (Id. at ¶ 3.) The "downline" refers to those dealers working beneath another dealer. (Id.) Dealers are rewarded for recruiting other dealers to join the EcoQuest ranks. (Id.) Depending on production levels and recruitment, an individual dealer (like DuVall) can reach the rank of Dealer, Distributor, Manager, or Master Manager. (Id.) In this case, Duke DuVall is a Master Manager. (Id. at ¶ 4.)

Each EcoQuest product is assigned a point value, called a QV (qualifying volume). (Id. at ¶ 5.) Dealers receive QV points as they purchase EcoQuest products. (Id. at ¶ 6.) For a dealer to qualify for the Technology Bonus and the Sales Manager Generational Override Bonus, the dealer must 1) have 1,000 personal QV points, and 2) have four separate "legs" or lines of his downline organization with 1,000 QV points. (Id.) These requirements have been in place for several years. (Id.)

In July 2007, Duke DuVall did not have 1,000 personal QV points, and therefore failed to qualify for the Technology Bonus or the Generational

Override Bonus. (Id. at ¶ 7.) After July 2007, DuVall set up an "auto-ship" program, that entitled him to receive 500 QV points each month. (Id. at ¶ 8.) When DuVall set this up, EcoQuest was doubling QV point totals. (Id.) In other words, an order of 500 QV points would be credited as 1,000 QV points. (Id.)

In December 2007, May 2008, and June 2008, DuVall did not receive the Generational Override Bonus. (Id. at ¶¶ 10-11.) According to EcoQuest, DuVall satisfied the personal QV requirements for these months, but did not have four legs with 1,000 QV points. (Id.)

In March 2008, DuVall spoke with Robert Hansard, EcoQuest's manager for Sales Manager Support and Promotions. (Id. at ¶¶ 1, 12.) During this conversation, Hansard told DuVall that his QV points would no longer be doubled, and that he would need to order products worth 1,000 QV points each month to reach the bonus levels. (Id. at ¶ 12.) DuVall attained a 1,000 QV points that month, and in the subsequent months. (Id.)

EcoQuest dealers could also qualify for a bonus called the UniLevel Bonus, the Double Play and Triple Play Bonus, and the Regional Director Overlay Bonus. (Id. at ¶¶ 14, 17.) DuVall has received the Double Play and Triple Play Bonus since it was introduced in March 2008. (Id. at ¶ 16.) The Regional Director Bonus is based on a complex formula, which measures the activity of the dealer's downline in the consumable line of products. (Id. at ¶ 17.) The Regional Director Bonus has five tiers, with each tier assigned a TDCQV (total downline consumer qualifying volume) point value. (Id.) The TDCQV point values are 15,000 (Level 1), 25,000 (Level 2), 50,000 (Level 3), 75,000 (Level 4), and 100,000 (Level 5). (Id.) To qualify for any tier of the Regional Director Bonus, no more than ninety percent of the TDCQV value can come from a combination of two legs of the dealer's downline. (Id.) For instance, to reach Level 2, a dealer's third leg (or combination of lower legs) must have at least 2,500 points, or 10% of the necessary TDCQV points. (Id.)

In May 2008, DuVall qualified for the Level 2 bonus, and earned $1,556. (Id. at ¶ 19.) In June 2008, DuVall received the Level 1 bonus, but not the Level 2 bonus. (Id. at ¶¶ 18-19.) According to EcoQuest, he failed to qualify for the Level 2 bonus because his total point value

was below 25,000 (he had 24,967 TDCQV points), and because his 10% leg only accounted for 2,467 of his total points. (Id. at ¶ 18.)  He earned $802 for reaching the Level 1 bonus.  (Id. at ¶ 19.)  Had he qualified for Level 2 in June 2008, DuVall would have earned $1,819.55 - or an additional $1,017.55.  (Id.)

**Injunctive Relief**

Injunctive relief is considered to be a drastic and extraordinary remedy that is not to be routinely granted.  Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).  For that reason, injunctive relief should be granted only if the right to relief is clearly warranted.  Dymo Indus., Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964) (per curiam).  "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction."  Truly v. Wanzer, 46 U.S. 141, 142 (1847).

Before granting injunctive relief, a court must consider four factors: 1) the threat of irreparable harm to the moving party; 2) the state of the balance between the harm to the moving party and the harm that granting the injunction will inflict on the other parties; 3) the probability that the moving party will succeed on the merits; and 4) the public interest.  Dataphase Sys. Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  No single factor is dispositive; all the factors must be considered when deciding whether to grant an injunction.  Baker Elec. Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994).  At the same time, "a party moving for a preliminary injunction is required to show the threat of irreparable harm."  Id.  Indeed, the failure to show irreparable harm is an independently sufficient ground for denying injunctive relief.  Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

Irreparable harm is a harm for which there is no adequate remedy at law.  See id.  The possibility of money damages provides an adequate remedy at law.  Gelco Corp. v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987).  Simply put, the strong arm of equity should be extended only to cases of "great injury, where courts of law cannot afford an adequate

and commensurate remedy in damages." Truly, 46 U.S. at 142.  The burden of establishing the propriety of injunctive relief rests with the moving party.  Chaske, 28 F.3d at 1472.

The plaintiffs have failed to prove the threat of irreparable harm. The plaintiffs argue that they should have been awarded the Regional Director Level 2 Bonus.  They argue that DuVall Marketing had over 45,000 points for June 2008, but that this total was changed to 24,967.  (Doc. 93 at 4.)  The plaintiffs also argue that they should have been awarded the Override Bonus for December 2007, May 2008, and June 2008.  (Doc. 101 at 4.)  Taken together, the plaintiffs argue that EcoQuest has wrongfully withheld several thousands of dollars in bonuses.  (Doc. 93 at 4; Doc. 101 at 6.)

The plaintiffs' own argument demonstrates the adequacy of money damages.  According to their memoranda, several thousand dollars would remedy the alleged harm inflicted by the defendants.  In addition, the plaintiffs point to a discreet set of incidents, all in the past.  The plaintiffs have not proved that the alleged abuses are of a continuing nature or that the alleged abuses defy calculation.  See 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2944 (2d ed. 1995) (A legal remedy may be deemed inadequate if the plaintiff demonstrates damages would be difficult or impossible to measure, or if the injury is of a continuing nature).  The plaintiffs have failed to prove that there is a threat of irreparable harm, which would warrant the extraordinary remedy of injunctive relief.

The motion for injunctive relief is denied.

**Appointment of Special Master**

Rule 53(a)(1)(C) allows a court to appoint a master to address pretrial and post-trial matters that cannot be effectively and timely addressed by the judge. Fed. R. Civ. P. 53(a)(1)(C).  The appointment of a special master is the exception and not the rule.  Inventory Locator Serv. LLC v. Partsbase, Inc., No. 02-2695 Ma/V, 2006 WL 1646091, at *2 (W.D. Tenn. June 14, 2006).

In this case, the plaintiffs have not provided any specific reasons or relevant authority that would justify the appointment of a special master. The motion for the appointment of a special master is denied.

### VII. MOTION TO REDACT DOCUMENTS

The defendants move for leave to redact previously filed documents. (Doc. 124.) The plaintiffs have not objected to this motion.

The motion for leave to redact previously filed documents is granted.

### VIII. MOTION FOR RULE 11 SANCTIONS

The defendants move for sanctions under Rule 11. (Doc. 115.) The defendants argue that the plaintiffs' motion for injunctive relief was entirely baseless and without factual support. The defendants argue that the plaintiffs filed the motion before conducting any investigation into whether the allegations had any merit. The defendants move for the reasonable costs and attorneys' fees associated with responding to the motion for injunctive relief. (Doc. 116.)

In response, the plaintiffs argue that their motion for a preliminary injunction was not presented for an improper purpose. They argue that the motion for an injunction and the appointment of a master had legal merit. (Doc. 129.)

Rule 11 provides the Court with the discretion to impose sanctions if a party submits a motion for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or if a party submits a motion that lacks evidentiary support. Fed. R. Civ. P. 11(b)-(c); Siepel v. Bank of Am., N.A., 239 F.R.D. 558, 564-65 (E.D. Mo. 2006), aff'd, 526 F.3d 1122 (8th Cir. 2008). Determinations under Rule 11 often involve "fact-intensive, close calls." Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1010 (8th Cir. 2006), cert. denied, 127 S.Ct. 2043 (2007).

In its motion for injunctive relief, DuVall Marketing expressed concern that it had not been notified by EcoQuest of certain changes in the compensation scheme in March 2008. DuVall Marketing ultimately learned of the changes through other dealers, but there is no dispute

that it did not initially learn about these changes through EcoQuest's own channels for communicating with its dealers. (Doc. 93 at 2-3; see Doc. 98, Hansard Affidavit at ¶ 12.) Because DuVall Marketing's concerns were legitimate, its subsequent motion for injunctive relief - while denied - was not so improper or lacking evidentiary support as to call for sanctions. See Executive Air Taxi Corp. v. City of Bismark, N.D., 518 F.3d 562, 571 (8th Cir. 2008) (finding district court properly denied motion for sanctions, even though the plaintiff's claims were "thin" and failed to survive summary judgment).

The motion for Rule 11 sanctions is denied.

## IX.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED THAT** the motion of defendants for partial summary judgment (Doc. 81) is sustained. Counts IX and X are dismissed with prejudice.

**IT IS FURTHER ORDERED THAT** the motion of defendants to seal and for costs (Doc. 88) is denied.

**IT IS FURTHER ORDERED THAT** the motion of plaintiffs for leave to file a second amended complaint (Doc. 91) is denied in part, and otherwise granted. The plaintiffs shall not file a second amended complaint, but the first amended complaint is hereby amended by interlineation to include changes one, two, three, four, and six. Counts IX and X remain dismissed.

As identified above, the first amended complaint is hereby amended, such that: (1) Natalie Jackson's name is changed to Fortunata Jackson; (2) Best Investments is also referred to as Best Finance, but not HRT; (3) Air Partners Investment Group is no longer listed as a defendant; (4) EcoQuest MAC is described as a non-defendant affiliate; and (5) the allegation that "AAA altered EcoQuest's prior compensation plan by using a pyramid structure to compensate its distributors" is added to the first amended complaint. (Doc. 96 at 3-4, Doc. 126 at ¶ 150.)

**IT IS FURTHER ORDERED THAT** the motion of plaintiffs for leave to file additional exhibits (Doc. 114) is granted.

**IT IS FURTHER ORDERED THAT** the motion of plaintiffs for an injunction and the appointment of a special master (Doc. 92) is denied.

**IT IS FURTHER ORDERED THAT** the motion of defendants for leave to redact previously filed documents (Doc. 124) is granted.

**IT IS FURTHER ORDERED THAT** the motion of defendants for Rule 11 sanctions (Doc. 115) is denied.

**IT IS FURTHER ORDERED THAT** the motions of plaintiffs for an extension of time to file a response to the motion for sanctions (Docs. 121, 125) are granted.

       /S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 12, 2008.